BERTOLLI USA, INC. and Cirio Bertolli De Rica-Societa Generale Delle Conserve Alimentari, S.p.A., Plaintiffs,

v.

**FILIPPO BERTOLLI FINE FOODS, LTD. and Filippo Bertolli, Defendants.**

**No. 87 Civ. 2302 (WK).**

United States District Court, S.D. New York.

June 15, 1987.

---

Harold I. Kaplan, Robert S. Weisbein, Blum Kaplan, New York City, for plaintiffs.

John H. Shields, George P. Leshanski, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiffs, manufacturers of olive oil sold under the trademark "Bertolli", seek to enjoin defendant Filippo Bertolli (great great-grandson of the founder of the Bertolli food business) and his corporation from using the name Bertolli as a trade mark or service mark in the manufacture, import, distribution or sale of olive oil. Plaintiffs allege trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as state law claims of common law trademark infringement, unfair competition, injury to business reputation and dilution.

Plaintiffs now move, by order to show cause, for the entry of a preliminary injunction. After considering the affidavits submitted by both sides, we heard oral argument and the testimony of Filippo Bertolli on May 15, 1987. Subsequently, the parties submitted additional briefs.

For the reasons discussed below, we believe that the requested injunction is appropriate in the circumstances.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Cirio Bertolli De Rica-Societa Generale Delle Conserve Alimentari S.p.A. ("Cirio Bertolli"), an Italian corporation, is the owner of numerous trademark registrations featuring the name Bertolli. Bertolli USA, a wholly owned subsidiary of Cirio Bertolli, is the exclusive importer and distributor of Bertolli olive oil and other food products in the United States. Bertolli brand products have been promoted and sold in the United States for over 30 years, and 1986 sales exceeded $26 million.

Defendant Filippo Bertolli ("Filippo"), the 29 year old great great-grandson of the founder of the Bertolli food business in Italy, incorporated defendant Filippo Bertolli Fine Foods, Ltd. ("FBFF") on May 8, 1986. Filippo has never worked for plaintiffs, although he is familiar with the olive oil business through his father, who worked in Italy for Alivar, a subsidiary of Cirio Bertolli. Filippo also worked for Alivar for a short time, and for approximately four years thereafter sold food products, including olive oil, in Italy and in the United States.

After incorporating FBFF, Filippo returned to Italy, where he printed up 13,000 labels bearing the name Filippo Bertolli Fine Foods, Ltd. and the "trademark" Filippo. The label also displayed the signature "Filippo Bertolli" in the lower right hand corner. The back label contains the phrase "five generations of olive oil traders." In addition, Filippo purchased 2,500 cartons and 12,000 bottles for use in the new business. He brought nine bottles of his merchandise to the United States (one of which he sent to a distributor in San Francisco), but neither of the two distributors whom he contacted expressed interest in the product. Moreover, in January, 1987, he discovered that he could not use "Filippo" as a trademark because another olive oil maufacturer already owned the mark "Filippo Berio." At present, these nine bottles are the only ones produced by FBFF, and none of them are on the market.

Filippo offered no explanation for choosing the name "Filippo Bertolli Fine Foods" except that he likes his own name.

■ The standard for obtaining a preliminary injunction is well established in this circuit. Plaintiffs must demonstrate irreparable harm and either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor. *Church of Scientology International v. Elmira Mission* (2d Cir.1986) 794 F.2d 38, 41.

■ Initially, defendants assert that plaintiffs' action is premature because defendants' olive oil has not been advertised or sold to the general public. Since defendants' product has not entered the marketplace, it is argued, there can be no irreparable injury to plaintiffs. This contention is meritless. In a trademark case, irreparable injury will be found where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *McGregor-Doniger, Inc. v. Drizzle Inc.* (2d Cir.1979) 599 F.2d 1126, 1130, *quoting, Mushroom Makers v. R.G. Barry Corp.* (2d Cir.) 580 F.2d 44, 47, *cert. denied* (1979) 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75. Furthermore, § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), does not require that the allegedly infringing merchandise be available to the consuming public. That statute provides that a registered mark is infringed whenever any person merely uses in commerce any imitation of the mark. To meet the definition of "use in commerce" it is sufficient that the goods be transported in commerce. 15 U.S.C. § 1127. Defendants' actions—including sending one bottle of olive oil to a distributor in San Francisco and offering the product to another distributor in New York, plus their activities of printing labels and cartons—are sufficient to meet the "use in commerce" test.

Aside from these legal arguments, it seems to us that equity and common sense dictate the issuance of an injunction at this early stage, before defendants have need-

lessly devoted time, energy and financial resources to a futile endeavor. This sentiment was expressed by Judge Gurfein in *George Washington Mint, Inc. v. Washington Mint, Inc.* (S.D.N.Y.1972) 349 F.Supp. 255, 263:

> [A] preliminary injunctive decree in a case of this sort is sometimes an act of kindness to the party enjoined. It cuts him off from a business life which, from all the portents, would involve a series of trademark frustrations. By the time he would have attained some modicum of success, it might be taken away by court decree, making him start all over again. It is more consonant with equity to enjoin him at the threshold of his enterprise.

■ Turning to the likelihood of success on the merits,[1] we note that the basic inquiry in a trademark infringement case is the likelihood of confusion. *Thompson Medical Co. v. Pfizer, Inc.* (2d Cir.1985) 753 F.2d 208, 213; *Mushroom Makers, Inc. v. R.G. Barry Corp., supra,* 580 F.2d at 47. Given the close similarity of the Bertolli trademark and the name "Filippo Bertolli Fine Foods," the well-established character of the Bertolli product line (as reflected in the large volume of its sales), the identical nature of the goods to be marketed by FBFF, the strength of Bertolli's mark (*i.e.,* its tendency to identify the goods sold under the Bertolli mark as emanating from a particular source, *see, McGregor-Doninger, Inc. v. Drizzle, Inc., supra,* at 1131) and the relative lack of sophistication of purchasers of an inexpensive bottle of olive oil, we find that ordinary consumers would be likely to be misled or confused as to the source of defendants' oil. *See, Polaroid Corp. v. Polarad Electronics Corp.* (2d Cir.) 287 F.2d 492, *cert. denied* (1961) 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (listing factors to be considered in determining whether there is a trademark infringment).

In particular, we find it likely that ordinary consumers would believe that plaintiffs sponsor, approve of or are somehow associated with defendants' oil. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.* (2d Cir.1979) 604 F.2d 200, 204 ("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.").

We also consider it relevant to our determination that defendants have advanced no practical reason for the choice of the name "Filippo Bertolli Fine Foods." As Judge Friendly has observed, we do "not look with much favor on the businessman who, out of the wealth of words available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product." *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.* (2d Cir.1972) 470 F.2d 689, 692. Accordingly, we conclude that plaintiffs have established a likelihood of success on the merits.

■ We next consider the proper scope of the injuction. Defendants concede that they cannot use Filippo's signature on the label, nor can they associate themselves with "five generations of olive oil traders." They urge, however, that they are entitled to use Filippo's name in conjuction with a disclaimer disavowing any relationship to plaintiffs. Accordingly, the only issue we must decide is whether defendants should be enjoined from using "Bertolli" as part of FBFF's corporate name. Defendants direct our attention to cases which have recognized that an individual has a qualified right to use his personal name in conjunction with his business, and argue that a disclaimer would be the most appropriate way to balance the competing interests of protecting an individual's use of his own name and the avoiding of confusion. While that approach has been followed in two recent cases in our circuit, *Taylor Wine*

---

1. At the outset, we observe that the registrations upon which plaintiffs rely—covering the marks "Francesco Bertolli" and Design, and "F. Bertolli" and Design—are prima facie evidence of plaintiffs' exclusive rights to the Bertolli trademark, pursuant to §§ 7(b) and 33(a) of the Lanham Act, 15 U.S.C. §§ 1507(b) and 1115(a).

There has been no evidence presented to rebut this prima facie showing. In addition, those registrations have become incontestable under § 15 of the Lanham Act, 15 U.S.C. § 1065. Defendant has raised no defenses or defects to the registrations.

*Co. v. Bully Hill Vineyards, Inc.* (2d Cir. 1978) 569 F.2d 731, and *Joseph Scott Co. v. Scott Swimming Pools, Inc.* (2d Cir.1985) 764 F.2d 62, we do not believe that it is appropriate here. In both of those cases the individual enjoined had established a personal reputation in the particular business involved, based on skills, knowledge and expertise acquired during years in the industry. Accordingly, in each case, the Court of Appeals used a disclaimer to modify the injuction entered below in order to permit the defendant to exploit the reputation he had developed through his own knowledge and experience. However, the crucial factor of reputation is wholly absent in the present situation. While we do not doubt Filippo's sincere desire to develop a reputation as a maker of quality foods, he is, at present, completely unknown. Any goodwill which defendants might build up in connection with their new business will be associated with whatever name Filippo ultimately may choose for their product. Hence, we fail to see any legitimate interest of defendants which would counsel in favor of allowing them to use Filippo's name even in the restricted fashion suggested. In our view, the instant case is factually much more similar to *Arthur Young, Inc. v. Arthur Young & Co.* (N.D.Ala.1983) 579 F.Supp. 384 (enjoining use of individual's name, Arthur Young, in corporate or business name in connection with business of executive recruitment) and to *Max Factor & Co. v. Factor* (S.D.Ca.1963) 226 F.Supp. 120, 127 (enjoining proprietor named Max Factor from using own name in the sale of women's hosiery when its use would inevitably represent his hosiery as that of plaintiff, the famous cosmetic company).

The motion for an order preliminarily enjoining defendants from using the name Bertolli as part of their corporate name is granted. Let plaintiffs submit an appropriate order on 5 days notice.

SO ORDERED.