**NBBJ EAST LIMITED
PARTNERSHIP,
Plaintiffs,**

v.

**THE NBBJ TRAINING ACADEMY,
INCORPORATED, Defendant,**

No. C2–01–909.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 15, 2001.

Jeffrey S. Standley, Standley & Gilcrest, Dublin, OH, for plaintiff.

Scott W. Spencer, Colombus, OH, for defendant.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of Plaintiff NBBJ East Limited Partnership's ("Plaintiff") Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. # 2). The Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. For the reasons that follow, Plaintiff's Motion is **GRANTED** to the extent set forth below.

### I. BACKGROUND

Plaintiff brings this action pursuant to Section 43(c) of the Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c) [hereinafter the "Trademark Dilution Act"]; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Deceptive Trade Practices, Ohio Revised Code § 4165.01, *et seq;* and, Ohio Common Law Trademark Infringement and Unfair Competition. For the reasons that follow, the Court concludes that Plaintiff is entitled to a preliminary injunction under the Trademark Dilution Act.

This matter initially came before the Court on September 18, 2001 on Plaintiff's motion for Temporary Restraining Order and Preliminary Injunction and Notice pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116. (Doc. # 2). On Sept 19, 2001 the Court conferred with counsel pursuant to S.D. Ohio Local Rule 65.1. (Doc. # 4). The parties agreed to mediation, which was unsuccessful. Subsequently, a hearing on the motion for preliminary injunction was held on October 4, 2001.

### II. UNDISPUTED FACTS

Plaintiff is a large, well-known architectural design firm, with offices throughout the world, and its principal place of business at 1555 Lake Shore Drive, Columbus, Ohio 43204. The firm is the largest architectural design company in Central Ohio and ranks as one of the five largest such firms in the United States. Plaintiff has designed numerous corporate, medical, sports, entertainment, airport, educational and other commercial facilities throughout the world.[1] Plaintiff has designed numerous facilities in Ohio including the Nationwide Arena, the Center of Science and Industry (COSI), the Paul Brown Stadium, the Arthur G. James Cancer Hospital, the Vern Riffe Center, the Columbus Crew Stadium, Nester Hall at Columbus State Community College, and Howard E. Fevre Hall at Ohio University. Plaintiff's projects have been recognized by the local and national press. Plaintiff and its related companies have been using the service mark and trade name NBBJ in association with the promotion and marketing of various architectural and design services for approximately fifty-six years.

Defendant is a new non-profit corporation which offers free technology and computer skills training. The non-profit corporation emphasizes the type of training which is designed to assist persons on public assistance to receive job skills which will lead to economic self-sufficiency. The

---

1. These foreign projects include the Beijing Hotel in Beijing, China, the Koo Foundation Cancer Center in Taipei, Taiwan, the Dogus Maslak Mixed–Use Development in Istanbul, Turkey, the Telenor Corporate Headquarters in Oslo, Norway, and the National Health Research Institutes in Chunan, Taiwan.

school operated by Defendant has trained over six hundred students in Central Ohio. Defendant's principal place of business is at 37 West Broad Street, Columbus, Ohio 43062.

On May 30, 2001 the organizers of the defendant corporation applied to the Ohio Secretary of State to reserve the name NBBJ .Training Academy Incorporated. The organizers were advised by the office that the name could by reserved. Thereafter, the defendant corporation was formed and the Ohio Secretary of State issued a certificate of incorporation in the name NBBJ Training Academy Incorporated.

Plaintiff has formed a number of Ohio Corporations with the name NBBJ tied to various other words.[2] Several of the corporations have lapsed and are no longer in existence. Plaintiff has since operated all of its divisions under its current name NBBJ East Limited Partnership. It has operated under an Ohio corporate name including "NBBJ" on a continuous basis since approximately 1950.

### III. STANDARD

■ Under Section 43(a) of the Lanham Act, it is unlawful to use any false designation of origin on or in connection with any goods or services in interstate commerce "which-(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities...." 15 U.S.C. § 1125(a)(1)(A). The standard of proof needed to prevail under this section of the Lanham Act is a showing of likelihood of confusion. *See Frisch's Restaurants v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 647 (6th Cir.1982) *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).

■ To prevail under common law trademark infringement or unfair competition as codified in O.R.C. § 4165 *et. seq.,* Plaintiff must meet the same standard as applies to Section 43(a) of the Lanham Act. *See Diamond Company v. Gentry Acquisition Corporation, Inc.,* 48 Ohio Misc.2d 1, 12, 531 N.E.2d 777 (1988); *Anheuser–Busch v. Florists Assn. of Greater Cleveland,* 603 F.Supp. 35, 38–39 (N.D.Ohio 1984). Thus, the Court will address these claims together.

The Lanham Act was amended in 1995 by the Trademark Dilution Act, 15 U.S.C. § 1125(c). The Trademark Dilution Act provides:

> Remedies for dilution of famous marks. (1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another persons's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c).

■ · In considering a motion for a preliminary injunction, the Court weighs and considers the following: (1) whether there is a strong or substantial likelihood of the movant's success on the merits; (2) whether an injunction will save the movant from irreparable injury; (3) whether an injunction will harm others, including the nonmovant; and (4) whether the public inter-

---

**2.** For example: NBBJ Interiors, NBBJ–Columbus, NBBJ Construction Services, NBBJ Roth Cincinnati, NBBJ, L.L.C., The NBBJ Group, and The NBBJ Group/Burckhardt & Partner.

est would be served by issuance of a preliminary injunction. *See e.g., International Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir.1991), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991); *Sandison v. Michigan High School Athletic Assoc.*, 64 F.3d 1026, 1030 (6th Cir.1997). These factors are meant to be balanced as they guide the Court in exercising its discretion; they are not due rigid application and need not be assigned equal weight. *In re Eagle–Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir.1992). While the Court need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision. The Court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix. *Id.*

## IV. ANALYSIS

Plaintiff brings this action under both Section 43(a) of the Lanham Act, and Section 43(c) of the Lanham Act, the Trademark Dilution Act. For the reasons set forth below, the Court provisionally determines that Plaintiff is entitled to an injunction under the Trademark Dilution Act. The Court denies the request for injunctive relief under Section 43(a) of the Lanham Act.

### A. *Likelihood of Success on the Merits*

#### 1. *Section 43(a) of the Lanham Act*

■ The issue in the cause of action under Section 43(a) of the Lanham Act is whether Defendant's use of the term NBBJ creates a likelihood of confusion among ordinary consumers. *See Wynn Oil Company v. American Way Service Corporation*, 943 F.2d 595, 599 (6th Cir. 1991). "The general concept underlying the likelihood of confusion test is that the public believe the 'the mark's owner spon-

sored or otherwise approved the use of the trademark.'" *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 599 (6th Cir.1991) (quoting *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir.1983)). The Court considers eight factors which serve as a guide to help determine whether confusion would be likely to result from simultaneous use of two contested marks. *See Frisch's Restaurants*, 670 F.2d at 648. The factors are (1) strength of Plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) Defendant's intent in selecting the mark; and (8) the likelihood of expansion of the products lines. *See id.; Homeowners Group, Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1106 (6th Cir.1991). While serving as a guide, these factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988).

■ The Court preliminarily finds that the likelihood Plaintiff will succeed on the merits of its Section 43(a) of the Lanham Act claim are slight. The respective services offered by the parties are sufficiently distinct in character that there is little chance of confusion among the general public. Plaintiff alleges that there is a strong likelihood of confusion because it offers an in-house continuing education program referred to as NBBJ University. The Court finds the fact that NBBJ University is an in-house training operation, offered to Plaintiff's employees, is significant. Since the training at NBBJ University is not offered to the general public, it is highly unlikely the general public will be confused by any training services offered under the name NBBJ. Consequently, no

injunction will issue pursuant to Section 43(a) of the Lanham Act.

### 2. Trademark Dilution Act

The Court next considers whether Plaintiff has demonstrated a substantial likelihood of success on the merits on the issue of trademark dilution under 15 U.S.C. § 1125(c). The Lanham Act defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127.

■ "For a plaintiff to succeed on a federal claim of dilution '(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.'" *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 577 (6th Cir.2000) *citing Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 215 (2d Cir.1999); *see also Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 638–39 (7th Cir.1999); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 170 F.3d 449, 452 (4th Cir.1999), *cert. denied,* 528 U.S. 923, 120 S.Ct. 286, 145 L.Ed.2d 239 (1999); *I.P. Lund Trading v. Kohler Co.,* 163 F.3d 27, 45–50 (1st Cir.1998); *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir.1998).

■ First, the Court concludes that the NBBJ name is famous. The Trademark Dilution Act "does not tell how famous a mark must be. Nor does it provide any direct guidance as to how courts should answer the question. The word 'famous' is susceptible to many widely different understandings." *TCPIP Holding Compa-*

*ny, Inc., v. Haar Communications Inc.,* 244 F.3d 88, 98 (2nd Cir.2001). In the absence of guidance from the Sixth Circuit on this analysis, the Court finds the reasoning in *TCPIP Holding Company* persuasive. *See id.* In *TCPIP Holding Company,* the court noted:

> Legislatures do not in all instances undertake to specify the precise standards courts must follow. They do not necessarily regard courts as adversaries to be rigidly controlled, lest they take unreasonable liberties of interpretation with the meaning of a statute. In some enactments, legislatures look upon the courts as their partners. Recognizing the difficulty of answering all questions prospectively, legislatures at times deliberately use a vague term, like "combination in restraint of trade," or "famous," knowing full well that its meaning is not precisely communicated, but counting on courts to understand the legislature's intentions and to interpret the word or phrase in a sensible manner to carry out those intentions.

*Id.* at 99.

Plaintiff is an internationally recognized architectural firm. Not only has it built the many well-known facilities in Ohio, it has also built many highly recognizable projects in other states, as well as other parts of the world. (*See e.g.,* Plaintiff's Hearing Exhibits 1–23). Plaintiff has also been featured in numerous Architectural, Design, Construction and Business Magazines. (*See e.g.,* Plaintiff's Hearing Exhibits 33–35). Clearly, Plaintiff's mark is famous, by any definition, in the architectural, design and construction communities. The Court, in giving effect to Congress' intention behind the Trademark Dilution Act, concludes that Plaintiff has demonstrated a sufficient degree of fame to qualify for protection of the Act.

■ Second, the Court concludes that the NBBJ mark is distinctive. Defendant argues that NBBJ is not distinctive for the purposes of dilution because it has not acquired a "secondary meaning, that is, the consuming public has not come to associate the mark with the products or services of its user." (*Defendant's Memorandum Contra Plaintiff's Motion for Temporary Restraining Order*, p. 8 citing *V Secret Catalogue, Inc. v. Moseley d.b.a. Victoria's Little Secret*, 259 F.3d 464, 469 (6th Cir.2001)). Defendant's argument is unpersuasive for two reasons. First, "[t]rademark law has long embraced the tenet that five years of continuous and exclusive use of a mark or trade dress generates a presumption of secondary meaning." *Yankee Candle Co. v. Bridgewater Candle Co.*, 99 F.Supp.2d 140 (D.Mass.2000) *citing* 15 U.S.C. § 1052(f)(1998); *see also Iowa Farmers Union v. Farmers' Educational & Co-op. Union*, 247 F.2d 809 (8th Cir.1957). It is undisputed that Plaintiff has continuously and exclusively used of NBBJ for approximately fifty-six years.

Further, as the Sixth Circuit recently explained:

Distinctiveness is a crucial trademark concept, which places marks on a ladder reflecting their inherent strength or weakness. The degree of distinctiveness of a mark governs in part the breadth of protection it can command. At the low end are generic words— words that name the species or object to which the mark applies. These are totally without distinctiveness and are ineligible for protection as marks because to give them protection would be to deprive competitors of the right to refer to their products by name.... Thus, no one can claim the exclusive right to use the mark "CAR" for a car. One rung up the ladder are "descriptive" marks— those that describe the product or its attributes or claims. These also have little distinctiveness and accordingly are ineligible for protection unless they have acquired "secondary meaning"—this is, unless the consuming public has come to associate the mark with the products or unless the consuming public has come to associate the mark with the products or services of its user.... The next higher rung belongs to "suggestive" marks; these fall in an in-between category.... They are given less protection than is reserved for more distinctive marks— those that are "arbitrary" or "fanciful." ... A mark is arbitrary or fanciful if there is no logical relationship whatsoever between the mark and the product on which it is used.... The most distinctive are marks that are entirely the product of the imagination and evoke no association with the human experience that relate intrinsically to the product.... The strongest protection of the trademark laws is reserved for these most highly distinctive marks.

*V Secret Catalogue*, 259 F.3d at 469 (emphasis in original) *citing Nabisco*, 191 F.3d at 215–16. The mark NBBJ is not a "descriptive" mark which describes a product or its attributes or claims. Consequently, it is not necessary for NBBJ to have acquired a secondary meaning. Rather, the Court finds that NBBJ is distinctive because it is arbitrary or fanciful. NBBJ evokes no association that relates intrinsically to architectural design and construction.

■ Third, the Court concludes that Defendant's use is commercial. The Lanham Act provides that the "word commerce means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The Supreme Court "has liberally construed the 'broadened commerce provisions' of the Lanham Act and recognized their 'sweeping reach.'" *Franchised*

*Stores of New York, Inc. v. Winter,* 394 F.2d 664, 669 (2d Cir.1968) *citing Steele v. Bulova Watch Co.,* 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952).

"[I]t is not necessary that the infringing use itself be in interstate commerce." *Lyon v. Quality Courts United,* 249 F.2d 790, 795 (6th Cir.1957). " '[I]n commerce' refers to the impact that infringement has on interstate use of a trademark; it does not mean that an infringer is immune from prosecution under the statute so long as he keeps his infringement entirely within the confines of a state." *Coca–Cola Company v. Stewart,* 621 F.2d 287, 290 (8th Cir.1980) *citing World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 488 (5th Cir.1971). "The Lanham Act encompasses intrastate activity that substantially affects interstate commerce." *See, e.g., Iowa Farmers Union v. Farmers' Educational & Coop. Union,* 247 F.2d 809, 816 (8th Cir.1957); *Drop Dead Co. v. S.C. Johnson & Son, Inc.,* 326 F.2d 87, 94 (9th Cir.1963), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); *Franchised Stores of New York, Inc.,* 394 F.2d at 669. "A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement." *Coca Cola Company v. Stewart,* 621 F.2d at 290 *citing Franchised Stores of New York,* 394 F.2d at 669.

Fourth, the Court concludes that Defendant's use began after Plaintiff's mark had become famous. The Court finds that the NBBJ mark is famous, as discussed *supra,* and it is uncontested that Defendant began using the mark many years after Plaintiff's use began.

█ Fifth the Court concludes that Defendant's use of the NBBJ mark causes dilution of the distinctive quality of the mark. As the Congressional Record indicates:

> [D]ilution is an injury that differs materially from that arising out of the orthodox confusion. Even in the absence of confusion, the potency of a mark may be debilitated by another's use. This is the essence of dilution. Confusion leads to immediate injury while dilution is an infection, which if allowed to spread, will inevitably destroy the advertising value of the mark.

*V Secret,* 259 F.3d at 475 *citing* H.R.Rep. No. 104–374 (1995), reprinted in 1996 U.S.C.C.A.N. 1029, 1032. This passage evinces an intent to provide a broad remedy for the lesser trademark violation of dilution and recognizes that the essence of the dilution claim is a property right in the potency of a mark. *See id.* Clearly, the potency of the use of the NBBJ mark will be lessened with each new use. It is simply the difference between: "Yes, I am familiar with NBBJ," and "No, I am not sure of the company to which you are referring-the architects or the computer training school?"

█ Last, the Court addresses the list of 10 factors adopted by the Sixth Circuit to determine whether dilution has occurred. *See V Secret,* 259 F.3d at 476 (adopting the list from *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 215, 217–22 (2d Cir.1999)). The factors, referred to as the "Nabisco factors," are a nonexclusive list to be to be applied as to the particular facts of each case. *See id.* The factors are: distinctiveness; similarity of the marks; "proximity of the products and the likelihood of bridging the gap;" "interrelationship among the distinctiveness of the senior mark, the similarity of the junior mark, and the proximity of the products;" "shared consumers and geographic limitations;" "sophistication of consumers;" actual confusion; "adjectival or referential

quality of the junior use;" "harm to the junior user and delay by the senior user;" and the "effect of [the] senior's prior laxity in protecting the mark." *V Secret,* 259 F.3d at 476.

██ As discussed *supra,* the NBBJ mark is quite distinctive, bearing little logical relations to the services it is used to market. Thus, it is deserving of a high degree of trademark protection. More importantly, the two marks in question are more than highly similar, they are almost exactly the same. Assuming that Defendant is correct in its assertion that the sophistication of those with whom Plaintiff does business and the differences in the services marketed by Plaintiff and Defendant would prevent actual confusion, this is a case that highlights the distinction between an infringement and a dilution claim. *See e.g., V Secret,* 259 F.3d at 477. While no consumer is likely to go to Defendant's computer training school and ask to speak with an architect, consumers who hear the name NBBJ are likely to automatically think of the more famous architectural firm and link it to the computer training school. This is a classic instance of dilution by blurring, that is, linking the senior holder-Plaintiff, with a single, unauthorized establishment-Defendant. *See id.* Given this conclusion, it follows that Plaintiff "would prevail in a dilution analysis, even without an exhaustive consideration of all ten of the Nabisco factors." *Id.*

### B. *Irreparable Harm*

██ "[D]istrict courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *Economou v. Physicians Weight Loss Centers,* 756 F.Supp. 1024, 1038 (N.D.Ohio 1991) *citing Wagner v. Taylor,* 266 U.S.App. D.C. 402, 836 F.2d 566, 575–76 (D.C.Cir.1987). Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187 (3rd Cir.1990) *citing Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir.1987). "Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Id.* Normally, a preliminary injunction is not appropriate where an ultimate award of monetary damages will suffice. *See Montgomery v. Carr,* 848 F.Supp. 770 (S.D.Ohio 1993). "However, money damages are only adequate if they can be reasonably computed and collected." *CompuServe Inc. v. Cyber Promotions,* 962 F.Supp. 1015, 1027–28 (S.D.Ohio 1997); *Basicomputer Corp. v. Scott,* 973 F.2d 507 (6th Cir.1992).

Plaintiff has demonstrated that Defendant's use of NBBJ dilutes the distinctiveness of its name. "This is the sort of injury that warrants the issuance of a preliminary injunction because the actual loss is impossible to compute." *Id.* at 1027–28. Accordingly, the Court concludes that issuance of an injunction will save Plaintiff from irreparable injury.

### C. *Harm to Others*

██ The Court next considers whether issuance of a temporary restraining order will cause substantial harm to others. "Although the Sixth Circuit defines this branch of the four-part test in terms of harm to others ... the focus is on the harm that a defendant will suffer if the requested injunctive relief is granted. It is with this factor that courts have traditionally balanced the equities...." *Shepard's Company v. The Thomson Corporation,* 1999 WL 777944 *7 n. 14, 1999 U.S. Dist. LEXIS 21051, at *25 n. 14 (July 15, 1999). Thus, the Court looks at the harm that Plaintiff will suffer in the absence of

an injunction and balances that with the harm which will befall Defendant if the injunction issues. *See id.; Southern Ohio Coal Co. v. United Mine Workers of America*, 551 F.2d, 695 (6th Cir.1977).

The Court recognizes that some hardship will befall Defendant, however, "given this Court's above conclusions, concerning Plaintiff's strong likelihood of success on the merits and irreparable injury, balancing the harm Defendants will suffer against those factors causes the Court to conclude that the equities tip decidedly in favor of [Plaintiff]." *Shepard's Company*, 1999 WL 777944 *7, 1999 U.S. Dist. LEXIS at *27. Also, Defendant is a new company with substantially less invested in the mark NBBJ than Plaintiff has invested over the past several decades of use of the mark.

Further, at least some authority suggests that enjoining further use of an infringing mark may be a "kindness" in that the enjoined party is spared potential further challenges. *See Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F.Supp. 203, 206 (S.D.N.Y.1987), (quoting *Geo. Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F.Supp. 255, 263 (S.D.N.Y.1972)); *Pride Communications Ltd. Partnership v. WCKG, Inc.*, 851 F.Supp. 895, 903 (N.D.Ill.1994). The argument is that:

> [E]quity and common sense dictate the issuance of an injunction at this early stage, before defendants have needlessly devoted time, energy and financial resources to a futile endeavor. This sentiment was expressed by Judge Gurfein in *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F.Supp. 255, 263 (S.D.N.Y.1972):
>
> > [A] preliminary injunctive decree in a case of this sort is sometimes an act of kindness to the party enjoined. It cuts him off from a business life

which, from all the portents, would involve a series of trademark frustrations. By the time he would have attained some modicum of success, it might be taken away by court decree, making him start all over again. It is more consonant with equity to enjoin him at the threshold of his enterprise.

*Bertolli USA*, 662 F.Supp. at 205–06.

### D. *Public Interest*

A final consideration is whether the issuance of a preliminary injunction furthers the public interest. Since Plaintiffs have established a substantial likelihood of success on the merits, the public interest favors restraining that activity. *See e.g., Shepard's Company*, 1999 WL 777944 *8, 1999 U.S. Dist. LEXIS 21051 at *30.

In this case, Congress has expressed a strong public policy against trademark dilution. The public interest is therefore served by the protection of famous names. This factor weighs in favor of the plaintiff.

## V. CONCLUSION

This Court is directed by the language of the Trademark Dilution Act to apply "principles of equity ... upon such terms as the court deems reasonable" in the issuance of an injunction. 15 U.S.C. § 1125(c). From the record before the Court, Plaintiff is entitled to an injunction. At the same time Defendant has not engaged in any misconduct or deliberate acts designed to diminish the value of Plaintiff's trade name. Further the record indicates that Defendant's business provides a very important public service to those in need of computer training.

It is hereby **ORDERED** that Defendant is preliminarily enjoined from the use of the mark NBBJ within one (1) year of the date of this Order. During such one year

period, Defendant shall undertake all reasonable steps to effectuate the following:

1. The implementation and use of a new name;

2. The use of such new name as to stationary, business cards, telephone number, advertisements and all other uses;

3. A change in the address of its web site;

4. A change in any signage.

All use of the mark NBBJ by Defendant after twelve (12) months is strictly prohibited.

**IT IS SO ORDERED.**