**WARNERVISION ENTERTAINMENT INC., Plaintiff,**

v.

**EMPIRE OF CAROLINA INC., Empire Industries Inc. and Empire Manufacturing Inc. (formerly Buddy L Inc.), Defendants.**

**No. 95 Civ. 9386 (HB).**

United States District Court, S.D. New York.

Feb. 12, 1996.

Robert C. Faber, Charles P. LaPolla, Ostrolenk, Faber, Gerb & Soffen, LLP, New York City, for plaintiff.

Charles A. Laff, Judith L. Grubner, Laff, Whitesel, Conte & Saret, Ltd., Chicago, IL, Alexandra D. Malatestinic, Darby & Darby P.C., New York City, for defendants.

## OPINION AND ORDER

BAER, District Judge:

Plaintiff has moved by Order to Show Cause for a preliminary injunction and recall order barring defendants from marketing toy vehicles under the unregistered trademark REAL WHEELS and related trade dress. Defendants have similarly moved for a preliminary injunction barring plaintiff's use of the REAL WHEELS mark and trade dress in the toy vehicle market. For the reasons that follow, plaintiff's motion is granted and defendant's motion is denied.

### I. Background

Plaintiff WarnerVision Entertainment Incorporated (WarnerVision) obtained rights to the REAL WHEELS trademark and trade dress by assignment from its parent company, Atlantic Recording Corporation (Atlantic) on January 19, 1995. In August 1994, Atlantic began to develop the REAL WHEELS mark and logo for use on a line of children's video cassettes formerly sold under the mark LIVE ACTION VIDEO FOR KIDS. Mockups of the REAL WHEELS mark and logo were presented to professional buyers during the fall of 1994 with promotional literature distributed between October and December 1994. This led up to shipment of videos bearing the mark on December 22, 1994 with a street date for retail sales to begin January 18, 1995. Such sales have continued to date.

On January 3, 1995, Atlantic filed several applications with the United States Patent and Trademark Office (PTO) to register the REAL WHEELS mark for a variety of products, including video cassettes, toy vehicles, bed linens and other children's products. The application for video cassettes has been initially allowed and is currently in the opposition period.

Plaintiff currently sells video cassettes in numerous toy store chains, such as Toys 'R' Us, as well as in music stores, such as Tower Records. The video cassettes are sold both by themselves and with a small toy related to the video packaged in a separate box and

shrink-wrapped together with the video cassette. For example, the video entitled "There Goes A Boat" has a toy boat attached to the packaging of the video. The REAL WHEELS mark and logo is not on the toy box and no toy vehicles are sold on their own, independent of the videos, under the mark. The toys are essentially a premium used to entice purchasers to buy the video, rather than part of the actual product for sale. Therefore, I conclude that WarnerVision has used the mark and logo only in the video cassette market.

The defendant Empire Manufacturing Inc. obtained the rights to the product line, trademark and trade dress developed by Buddy L Inc. in July 1995 following the latter firm's bankruptcy. Empire Manufacturing, along with defendant Empire Industries Inc., is a wholly owned subsidiary of defendant Empire of Carolina Inc. For the sake of convenience, I will refer to the defendants collectively as Empire. Buddy L began to develop the REAL WHEELS mark and conducted a trademark search in August 1994, although it may have decided to use the mark in May or June of that year. Buddy L made sales presentations using mockups of the mark and logo from October to December 1994 and presented the mark at trade fairs in January and February 1995. In December 1994, Buddy L received an order from Toys 'R' Us, although it apparently went unfilled. The total number of sales presentations made in the United States was five. On January 6, 1995, Buddy L filed an intent-to-use application with the PTO to register the REAL WHEELS mark for toy vehicles.

Buddy L's development of its mark stopped at some point in February 1995 due to financial difficulties. In March, Buddy L filed for bankruptcy and, as previously noted, its relevant assets were purchased by Empire in July. On August 15, 1995, Empire began to sell toy vehicles under its REAL WHEELS mark and logo and has continued to market them to date. These toys are sold through large toy chains such as Toys 'R' Us. On October 20, 1995, Empire obtained the rights to an intent-to-use application filed by Thomas Lowe Ventures, Inc. (TLV) on September 23, 1994 to register the mark REAL

WHEELS in connection with toy vehicle wheels. Both Buddy L's and TLV's applications have been initially rejected by the PTO.

WarnerVision first learned of Buddy L's use of the REAL WHEELS mark in February 1995 and sent a cease and desist letter. The parties dispute whether Buddy L ever responded to this letter, but knowing of the financial difficulties at Buddy L, WarnerVision did not follow up. When WarnerVision learned of Empire's product line on the market in September 1995, it again sent a cease and desist letter. The parties exchanged correspondence and WarnerVision brought suit on November 13, 1995 seeking, inter alia, preliminary injunctive relief.

## II. Discussion

■■■ Plaintiff seeks a preliminary injunction under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and related state law grounds. To obtain a preliminary injunction, a moving party must establish "(1) irreparable injury and (2) a likelihood of success on the merits *or* a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135–36 (2d Cir.1992). In trademark cases, "a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987) (citations omitted).

■■ Preliminarily, defendants argue that plaintiff's motion should be denied because plaintiff delayed in bringing suit and therefore cannot establish irreparable injury. Although unreasonable delay can negate a showing of irreparable harm, *see Citibank N.A. v. Citytrust*, 756 F.2d 273 (2d Cir.1985), I do not find that WarnerVision delay was unreasonable in this case. Plaintiff first learned of defendants' use of its mark in February 1995 and immediately sent a cease and desist letter. I find that plaintiff's lack of direct follow up is excusable given the industry knowledge that Buddy L was going into bankruptcy. WarnerVision continued to monitor the market and contacted Empire in

September when it learned of the new products on the market. Plaintiff maintained contact with defendant in an effort to resolve the dispute for the next two and one half months until it filed suit. *See CBS Inc. v. Liederman,* 866 F.Supp. 763, 766 (S.D.N.Y. 1994), *aff'd,* 44 F.3d 174 (2d Cir.1995). The Second Circuit recently noted that cases finding delay unreasonable drew the inference that "the owner of the mark or right had concluded, that there was no infringement but later brought an action because of the strength of the commercial competition." *Tom Doherty Assocs. v. Saban Entertainment, Inc.,* 60 F.3d 27, 39 (2d Cir.1995). The facts here do not support such an inference.

**A. Section 43(a) of the Lanham Act**

Section 43(a) of the Lanham Act prohibits the "false designation of origin" by the use of trademarks or trade dress in connection with goods or services. 15 U.S.C. § 1125(a); *see Banff, Ltd. v. Federated Dep't Stores, Inc.,* 841 F.2d 486, 489 (2d Cir.1988). This section protects both registered and unregistered marks. *Id.* Thus, plaintiff's mark and logo may receive protection even though they are unregistered.

■ To establish a claim under § 43(a) of the Lanham Act, a plaintiff must prove (1) that it has ownership rights to the trademark and trade dress, *Windows User, Inc. v. Reed Bus. Pub. Ltd.,* 795 F.Supp. 103, 106–07 (S.D.N.Y.1992), "(2) that its mark is distinctive and (3) that a likelihood of confusion exists between its product and the defendant's." *Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 582 (2d Cir.1993).

**1. Ownership Rights**

■ The first party to adopt and use a mark in commerce obtains ownership rights. *See Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 292 (3d Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271 (2d Cir.1974). The parties dispute which company first adopted the mark, but I find it unnecessary to resolve this issue at this point because clearly War-

nerVision made prior use of the mark in commerce and is the senior user.

■ As a preliminary matter, Empire claims that it has prior rights pursuant to the assignment of rights to an intent-to-use application for the mark REAL WHEELS for toy wheels filed by TLV. Empire is correct that under 15 U.S.C. § 1057(c) an applicant can use the date of filing an intent-to-use application to establish ownership rights. However, Congress made such rights "[c]ontingent on the registration of a mark on the principal register." *Id.* As TLV's application has been rejected and thus no registration has issued, Empire may not rely on it here. *See Talk To Me Prods. Inc. v. Larami Corp.,* 804 F.Supp. 555, 559–60 (S.D.N.Y. 1992), *aff'd,* 992 F.2d 469 (2d Cir.1993); *Windows User,* 795 F.Supp. at 107–08.

■ Use in commerce as defined in the Lanham Act "means the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. Actual sales of the goods, while sufficient to establish use, are not necessary. *See New England Duplicating Co. v. Mendes,* 190 F.2d 415, 417–18 (1st Cir. 1951). Rather, the test is whether the mark was used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 418; *see also Windows User,* 795 F.Supp. at 108. Thus, although mere advertisement by itself does not constitute use in commerce, extensive advertising and promotional activities may satisfy the *Mendes* requirement. *New West Corp. v. NYM Co.,* 595 F.2d 1194, 1200 (9th Cir.1979). The inquiry is fact sensitive and must look to the totality of the circumstances involved. *Windows User,* 795 F.Supp. at 108.

WarnerVision began promoting its mark to retailers in August 1994. It is unnecessary to determine whether this promotional use is sufficient on its own because WarnerVision began shipping videos with toy vehicles attached under the REAL WHEELS mark on December 22, 1994 with a street date for retail sales to begin January 18, 1995. This use of the mark in the course of actual sales to retail customers beginning in January

1995 has continued to date. Therefore, WarnerVision has established use in commerce no later than January 18, 1995.

 I find that Empire established actual use in commerce on August 15, 1995. Empire's argument that Buddy L established analogous use of the mark through its promotional efforts is unpersuasive. When viewed in their totality, Buddy L's promotional activities do not constitute bona fide use of the mark. First, there were only a few presentations made to industry buyers. *Compare New West,* 595 F.2d at 1200 (promotional activities, including 430,000 subscription solicitations sent to individual consumers as well as special advertising supplement in established magazine, held to constitute use in commerce). Even considering the facts that some of the presentations were at trade shows, and that an order was received from Toys 'R' Us, Buddy L's promotional activities do not approach those held in other cases to be use in commerce. Second, Buddy L's bankruptcy created a break in its use of the mark. To establish ownership rights, use must be continuous. *See Ford Motor,* 930 F.2d at 292. In addition, where promotional activities are involved, the use must be within a commercially reasonable time prior to actual use. *Maryland Stadium Authority v. Becker,* 806 F.Supp. 1236, 1239 (D.M.D.1992) *aff'd,* 36 F.3d 1093 (4th Cir.1994). Although a seven month break may not be commercially unreasonable as a matter of law, it certainly reduces the likelihood that the mark has distinguished itself in the public's mind. It is more reasonable to conclude that any associations created by the sporadic promotional efforts had dissipated by the time Empire brought the products to market.

WarnerVision has established use in commerce roughly seven months prior to Empire and is the senior user of the REAL WHEELS trademark and associated trade dress.

2. Distinctiveness of the Trademark and Trade Dress

 The distinctiveness of a mark or trade dress is a measure of "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Paddington,* 996 F.2d at 585 (citation omitted). To determine whether REAL WHEELS is distinctive, the Court considers what type of mark it is under the test set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976): "Arrayed in ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Id.* at 9.

 A generic mark is a common description of the goods and is never entitled to protection. *W.W.W. Pharmaceutical Co. v. Gillette Co.,* 984 F.2d 567, 572 (2d Cir.1993). A descriptive mark "'describ[es] the qualities, ingredients, effects, or other features of the product naturally and in ordinary language' and [can be protected] only where secondary meaning can be established." *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 212–13 (2d Cir.1985) (citation omitted). Suggestive marks "require 'imagination thought and perception to reach a conclusion as to the nature of goods.'" *Id.* at 213 (citation omitted). Finally, an arbitrary and fanciful mark has "no association with the particular product." *Edison Bros. Stores, Inc. v. Cosmair, Inc.,* 651 F.Supp. 1547, 1554 (S.D.N.Y.1987). Both suggestive and arbitrary marks are entitled to protection without proof of secondary meaning. *Id.*

 I find that the REAL WHEELS mark used to market video cassettes is suggestive and thus entitled to protection without proof of secondary meaning. Clearly, some "imagination, thought and perception" is necessary to reach the conclusion that a box marked REAL WHEELS contains a video cassette. I do not believe the mark is arbitrary because several of the video cassettes have vehicle themes, such as "There Goes A Truck" and thus there is some remote connection between the mark and the product's contents. Although WarnerVision's mark has not been formally registered, and thus is not entitled to a presumption that it is not merely descriptive, *see McGregor–Doniger, Inc. v. Drizzle Inc.,* 599 F.2d 1126,

1132 (2d Cir.1979), I find support for this conclusion in the fact that the Examining Attorney at the PTO has approved Warner-Vision's application for registration of the mark for use on video cassettes.

 The Court also applies the *Abercrombie & Fitch* analysis to determine whether the REAL WHEELS logo is entitled to protection. *See Paddington*, 996 F.2d at 583. As the Second Circuit noted in *Paddington*, producer's have an almost unlimited range of choices for the logos that adorn their goods. Therefore, most trade dress is arbitrary or fanciful and entitled to protection. *Id.* The REAL WHEELS logo is a decorative element of trade dress that is not a functional aspect of the packaging. After examining the overall impression created by the design of the logo, I conclude that it is an arbitrary trade dress. An observer considering purchasing a video with this trade dress would certainly conclude that the dress indicated the origin of the product. *See Paddington*, 996 F.2d at 582 (noting that under *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 771, 112 S.Ct. 2753, 2759, 120 L.Ed.2d 615 (1992), the proper inquiry is whether the logo is " 'capable of identifying a particular source of the product' ").

3. Likelihood of Confusion

The central inquiry in a Lanham Act case "is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

 In analyzing the likelihood of confusion as to both the trademark and trade dress, the Court applies the test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *See Paddington*, 996 F.2d at 584. The Court considers:

(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the defendant's product; (8) the sophistication of the relevant consumer group.

*Id.* The analysis of these factors is not a mechanical process, but rather involves a weighing of the evidence in an effort to determine "whether consumers are likely to be confused." *Id.*

a. Strength of the Mark

 The strength of a mark or dress is measured by its distinctiveness. *Paddington*, 996 F.2d at 585. Again, the Court looks to the *Abercrombie & Fitch* framework in analyzing the strength of a mark or dress. *McGregor–Doniger*, 599 F.2d at 1131. Although a mark may be considered strong without proof of secondary meaning, the Court may consider secondary meaning in determining a mark's strength. *Paddington*, 996 F.2d at 585. In analyzing secondary meaning, courts consider "advertising expenditures, sales success, unsolicited media coverage of the product, attempts to plagiarize the mark, and length and exclusivity of the mark's use." *Thompson Medical*, 753 F.2d at 217.

 I find that the REAL WHEELS mark is moderately strong. As discussed above, it is a suggestive mark. I find, however, that its strength is amplified by the fact that the mark has probably developed some secondary meaning. First, WarnerVision has conducted substantial advertising for its product. In addition, the videos appear to have been successful in the market. Therefore, although the product has not been on the market for an overly long period (roughly one year, seven months of which were exclusive), I find it likely that the product has achieved some name recognition among consumers.

 I find that the REAL WHEELS logo is strong trade dress. As discussed above, the logo is arbitrary and "would appear to a consumer to be intended to identify the origin of the product." *Paddington*, 996 F.2d at 585. In addition the advertising and

sales also make it more likely that consumers view the trade dress as indicative of origin.

### b. Similarity of the Marks and Trade Dresses

■ In evaluating the similarity of marks and trade dress, the Court looks to whether, when viewed separately, the marks or dress "create the 'same overall impression.'" *Banff*, 841 F.2d at 492.

■ Under this test, I find that the two word marks substantially similar. Clearly, they both use the same words, REAL WHEELS. Differences in design do exist. WarnerVision's mark is written in white lettering against a blue background in a style resembling handwritten capitalized letters. In contrast, Empire's mark is written in double-thickness letters with light borders to create a shadowing, three-dimensional appearance. Empire's words are also written in dark lettering against a light background. I find these differences insufficient to reduce the similarity between the two word marks. A reasonable consumer would be likely to remember the words when making purchasing decisions and differences in style cannot overcome this fact.

■ I also find that the logos are similar, but much less so than the marks. Two elements lead to this conclusion, but one must be discounted. First, the most striking similarity between the logos is that they are both circular, but I find that use of a circle to indicate a wheel is generic. Second, both marks use the words REAL WHEELS prominently. This element is entitled to protection. Several differences must be noted, though. First, the lettering and coloring, as described above, are different. In addition, the center of WarnerVision's mark contains a gray disk with a horizontal black bar meant to symbolize a spoke. In contrast, Empire's logo contains a large, block-type "RW" in the center. Finally, Empire's logo is accompanied on the packaging by a red triangle with BUDDY L written in large lettering. This additional logo helps to distinguish the trade dress. *See Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 969 (2d Cir.1981) ("When similar marks are always presented in association with company names, the likelihood of confu-

sion is reduced."); *cf. W.W.W. Pharmaceutical*, 984 F.2d at 573 (use of words Right Guard before Sport Stick helps to distinguish that mark from Sportstick for lip balm). Despite these differences, I find that these logos would create the same overall impression in the mind of consumers.

### c. Competitive Proximity of the Products

■ This factor looks to whether the products compete with each other. *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir.1991). Confusion is more likely if the goods "serve the same purpose, fall within the same general class, or are used together." *Id.* I find that these products are proximate. Both products are sold in the same toy stores and are part of the same general class of children's toys. A consumer looking for an item to entertain a child may choose either a toy vehicle or a video cassette and be satisfied. Although the products may not be perfect substitutes in the minds of all consumers, that is not required. *Cf. Mushroom Makers*, 580 F.2d at 47–48 (women's sportswear and shoes are proximate).

### d. Likelihood of Bridging the Gap

■ This factor considers the likelihood that plaintiff will enter the toy vehicle market. *Lang*, 949 F.2d at 582. I find there is a strong likelihood that WarnerVision will bridge the gap between the video cassette and toy vehicle markets. Both parties agree that there is a great deal of cross marketing between the toy and video markets. In addition, plaintiff has indicated that it has conducted negotiations with toy manufacturers to license the trademark and has filed applications with the PTO. Finally, although I find that the toy premiums attached to the video cassettes do not constitute use of the REAL WHEELS mark and logo in the toy vehicle market, it is reasonable to conclude that the premiums are being used as a way to obtain a toehold in the toy market before actual entrance.

### e. Actual Confusion

■ Evidence of actual confusion is not necessary to state a claim under § 43(a).

*McGregor–Doniger,* 599 F.2d at 1136. However, such evidence does "strongly indicate[ ] the likelihood of confusion." *Edison Bros.,* 651 F.Supp. at 1558. Plaintiff has not presented any evidence of actual confusion in the market.[1] Although it is permissible to infer that there is no likelihood from an absence of actual confusion, I decline to do so given the fact that the products have been on the market simultaneously for only a few months. *McGregor–Doniger,* 599 F.2d at 1136. Thus this factor favors neither party.

### f. Good Faith

I find that Empire acted in good faith in developing the REAL WHEELS mark and logo. It appears that both parties developed the marks and logos at roughly the same time, the late-summer and early fall of 1994. Thus, there was no intentional copying. In addition, Buddy L conducted a full trademark search which supports the good faith contention. *See W.W.W. Pharmaceutical Co. v. Gillette Co.,* 984 F.2d 567, 575 (2d Cir. 1993).

### g. Quality of the Goods

■ As the Second Circuit noted in *W.W.W. Pharmaceutical,* a senior user is entitled to protect its reputation for quality from possible damage by inferior goods produced by the junior user. *Id.* WarnerVision does not contend that Empire's goods are not of high quality. Plaintiff claims only that it has no control over the quality of Empire's products. This is true in every case and does not help plaintiff. Having been presented with no evidence contrary to Empire's claim that its goods are of a high quality, I find that this factor weighs for defendants. *Id.*

### h. Sophistication of the Buyers

■ The Court considers the sophistication of the buyers in analyzing the likelihood of confusion because "[t]he more sophisticated the consumers of the product are, the less likely it is that similarities in trade dress or trade mark will result in confusion concerning the source or sponsorship of the product." *Paddington,* 996 F.2d at 587. Both parties assert that the persons making purchasing decisions with respect to toys are often children, but they draw different conclusions from this fact. Plaintiff claims that children are not sophisticated, while defendant argues that they are knowledgeable about toys. Empire also adds that parents are likely to consider carefully the toys they give to their children. I agree with Empire and find that toy purchases are made by reasonably sophisticated buyers. First, Empire is correct that children are often extremely discriminating about toys. Second, parents, though perhaps often tired and stressed when shopping for toys, generally do pay significant attention to the products they give to their children.

### i. Overall Analysis of the *Polaroid* factors

■ After considering all of the above factors and weighing them together in an effort to determine the likelihood of confusion, I find that WarnerVision is entitled to preliminary injunctive relief.

■ In the Second Circuit, where the marks are nearly identical and the products are proximate, likelihood of confusion is established as a matter of law. *Mushroom Makers,* 580 F.2d at 47–48. This does not automatically entitle the senior user to injunctive relief, however, because the Court must still consider all of the *Polaroid* factors. *See Vitarroz,* 644 F.2d at 966. Here, unlike in *Mushroom Makers* and *Vitarroz* and other cases where injunctive relief was denied even though the marks were nearly identical and the products proximate, there is a likelihood that the senior user will bridge the gap between the two product markets. As the Lanham Act protects senior users against "loss of patronage, loss of reputation, and *limitation on business expansion,*" *id.* at 967 (emphasis added), WarnerVision has a protecta-

1. WarnerVision has presented one declaration describing a possible instance of actual confusion. The declarant states that she received a telephone call from a potential licensee who apparently was concerned about Empire's products. Silverman Decl. ¶ 21. I do not find this evidence sufficient because the licensee is not a consumer and the vague wording of the declaration is not a persuasive indication that the licensee actually was confused.

ble interest in the use of the REAL WHEELS mark on toy vehicles. Therefore, I find that WarnerVision is entitled to an injunction prohibiting Empire's use of the REAL WHEELS mark on toy vehicles.[2]

The trade dress claim is a much closer question. However, on consideration of the *Polaroid* factors, I also conclude that there exists a likelihood of confusion between the two logos.

### 4. Empire's Motion For Preliminary Injunction

Empire seeks a preliminary injunction barring WarnerVision from entering the toy vehicle market under the REAL WHEELS trademark and trade dress. As discussed above, however, Empire has not established ownership rights to the mark and dress. Therefore, there is neither a likelihood Empire will succeed on the merits nor a significant question going to the merits. Empire's motion is denied.

### B. State Law Claims

### 1. Unfair Competition

■■■ WarnerVision brings a claim for unfair competition under New York law. This doctrine protects a plaintiff against the misappropriation of its labors and expenditures by another. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). This claim shares many of the same elements as a claim under the Lanham Act. *W.W.W. Pharmaceutical*, 984 F.2d at 576. In addition to proving a likelihood of confusion, however, *see Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1048 (2d Cir.1992), a plaintiff must also demonstrate bad faith. *Saratoga Vichy Spring*, 625 F.2d at 1044. As discussed above, WarnerVision has not established bad faith by Empire. Therefore, plaintiff's unfair competition claim is denied.

### 2. Injury to Business Reputation and Dilution

■■■ WarnerVision also brings a claim for injury to business reputation and dilution under the law of all states in which Empire markets its products, including under N.Y.Gen.Bus.L. § 368–d. To state a claim for dilution under § 368–d, a plaintiff must show three elements:

(1) distinctiveness of the mark, either that the mark is 'truly of distinctive quality' or has acquired secondary meaning in the eyes of the public; (2) likelihood of dilution, either as the result of blurring of product identification or the tarnishing of an affirmative association that a mark has come to convey; and (3) predatory intent.

*W.W.W. Pharmaceutical*, 984 F.2d at 576 (citations omitted). WarnerVision has not satisfied these elements. First, under New York law, the distinctiveness requirement is stringent. The "statute protects only extremely strong marks." *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir.1983). The Second Circuit noted that the statute may not even cover all marks that qualify as arbitrary and fanciful under the *Abercrombie & Fitch* analysis. *Id.* Under this test, WarnerVision's mark and trade dress are not entitled to protection under § 368–d. In addition, plaintiff has not even established bad faith, let alone predatory intent.

### 3. Deceptive Acts and Practices

■■■ Finally, WarnerVision claims a right to a preliminary injunction under N.Y.Gen. Bus.L. § 349 (McKinney 1988). This statute prohibits "deceptive acts or practices in the conduct of any business, trade or commerce." *Id.* Corporate competitors have standing to bring suit under this section, but only if "the gravamen of the complaint [is] consumer injury or harm to the public interest." *Bris-*

---

**2.** Empire has requested an extension of time to oppose WarnerVision's registration of the REAL WHEELS mark for video cassettes. WarnerVision argues that such a request is inconsistent with Empire's position that there is no likelihood of confusion. Empire is permitted, however, to make alternative pleadings before the PTO to establish standing to oppose a registration. *See*

*Marchon, Inc. v. Marchon Eyewear, Inc.*, Opp. No. 85,745 (TTAB 1992). While I find there is some logical appeal to WarnerVision's argument, I do not need to resolve the issue of how alternative arguments before the PTO bear on actions in the district court because WarnerVision has established likelihood of confusion as a matter of law.

tol–Myers Squibb Co. v. McNeil–P.P.C., Inc., 786 F.Supp. 182, 215 (E.D.N.Y.), *aff'd in part and vacated in part on other grounds,* 973 F.2d 1033 (2d Cir.1992). In trademark and trade dress cases, courts consider whether the facts would trigger FTC action under 15 U.S.C. § 45 and whether the harm to the public interest alleged is within the ambit of the state statute. *Id.* at 215–16. I find that this is not a case in which FTC intervention would be triggered. Furthermore, Warner-Vision has not alleged that there is any danger to the public health. *Id.* at 216. Thus, plaintiff's claim for preliminary relief under § 349 is denied.

### III. Conclusion

For the reasons discussed above, plaintiff's motion for preliminary injunction will be GRANTED. Plaintiff shall submit an order to the Court. Defendant's motion for preliminary injunction is DENIED.

SO ORDERED.