**WARNERVISION ENTERTAINMENT INC., Plaintiff,**

v.

**EMPIRE OF CAROLINA INC., Empire Industries Inc. and Empire Manufacturing Inc. (formerly Buddy L Inc.) and Thomas Lowe Ventures, d/b/a Playing Mantis, Defendants.**

95 Civ. 9386 (HB).

United States District Court, S.D. New York.

March 26, 1996.

Robert C. Faber, Charles P. LaPolla, Ostrolenk, Faber, Gerb & Soffen, L.L.P., New York City, for plaintiff.

Charles A. Laff, Judith L. Grubner, Laff, Whitesel, Conte & Saret, Ltd., Chicago, IL, Alexandra D. Malatestinic, Darby & Darby P.C., New York City, for defendants.

## OPINION AND ORDER

BAER, District Judge:

Defendants Empire of Carolina, Inc., Empire Industries Inc., Empire Manufacturing Inc. and Thomas Lowe Ventures, Inc. (collectively "Empire") move for reconsideration of this Court's Opinion and Order dated February 12, 1996 granting plaintiff's motion for preliminary injunction and denying defendants' motion for preliminary injunction, or, in the alternative, for a stay of the preliminary injunction pending appeal. *See* 915 F.Supp. 639 (S.D.N.Y.1996). Plaintiff WarnerVision Entertainment Inc. ("WarnerVision") cross moves for modification of the injunction Order dated February 16, 1996 as modified by Order dated February 22, 1996. I have considered the parties' papers as well as the very helpful and articulate arguments by both sides made at a hearing on March 11, 1996. For the reasons that follow, these motions are DENIED.

### Discussion

I. Empire's Motion for Reconsideration

■ As discussed more fully in the Opinion and Order dated February 12, 1996, this action involves a dispute over the use of the REAL WHEELS trademark and related trade dress. Empire raises several arguments that it claims justify reconsideration. Most of them, however, were raised originally and rejected. I have considered these points and conclude they do not warrant a

different result now. The only argument that gives me pause is Empire's claim that it is entitled to rely on a pending intent-to-use trademark application in defending against WarnerVision's motion for a preliminary injunction. Although I find the argument fails as a matter of law, it is worthy of more extended consideration.

Empire has obtained by assignment the rights to an intent-to-use application for the REAL WHEELS mark filed on September 23, 1994 by defendant Thomas Lowe Ventures, Inc. ("TLV"). At the time I issued my initial opinion, it appeared from the record that the Patent and Trademark Office ("PTO") had objected to this application. In fact, unbeknownst to the Court, the PTO withdrew its objections on February 7, 1996, just days before I issued my opinion. In my February 12 Opinion and Order I held that "[a]s TLV's application has been rejected and thus no registration has issued, Empire may not rely on it here." 915 F.Supp. at 645. Implicit in this result is a finding that Empire could not rely on the application offensively as part of its motion for a preliminary injunction or defensively in opposition to WarnerVision's motion. In essence, I found that the intent-to-use application was irrelevant. Despite the recent PTO action, I maintain that view.

Section 7(c) of the Lanham Act provides in pertinent part:

> Contingent on the registration of a mark on the principal register provided by this Act, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration. . . .

15 U.S.C. § 1057(c). Empire argues in its motion for reconsideration that to allow WarnerVision, who made first actual use of the REAL WHEELS mark no later than January 18, 1995, and thus well after the TLV application date, to obtain an injunction would defeat the purpose of the intent-to-use provision.[1]

In interpreting the meaning of § 7(c), my analysis must begin with the statutory text. Where the language is unambiguous, that is generally the end of the matter. As the Supreme Court wrote in *Connecticut National Bank v. Germain:*

> We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, the first canon is also the last: "judicial inquiry is complete."

503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted). *See also United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986); *Wetzler v. FDIC,* 38 F.3d 69, 73 (2d Cir.1994). Legislative history may be considered, but "[i]n the absence of 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.' " *James,* 478 U.S. at 606, 106 S.Ct. at 3121 (*quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)); *see also Roy v. Teachers Ins. and Annuity Assoc.,* 878 F.2d 47, 49 (2d Cir.1989).

The text of § 7(c) is unambiguous. It states clearly that the priority rights of constructive use are "[c]ontingent on the registration of the mark." Here, Empire does not claim that it has obtained a registration. Rather, it contends that it should be allowed to bring the product to market so that it can make actual use of the mark in commerce and obtain a registration. However, this claimed right to use the intent-to-use application defensively as a shield to avoid an otherwise appropriate preliminary injunction has no basis in the statutory language.

Furthermore, an examination of the legislative history confirms my view that all rights of the intent-to-use applicant, both offensive and defensive, are conditioned on

---

**1.** In my February 12 Opinion and Order I found that WarnerVision made actual use of the mark no later than January 18, 1995. I found it unnecessary to determine whether WarnerVision's presale promotional activities constituted use in commerce. *See* 915 F.Supp. at 645–46. Given my disposition of the motion for reconsideration, that remains unnecessary.

registration. For example, the United States Trademark Association Trademark Review Commission Report stated that: "Nationwide constructive use accorded the filing date would be conditioned on registration. If registration did not issue, all priority and territorial issues would be decided under current law." USTA Trademark Review Commission Report and Recommendations on the United States Trademark System and the Lanham Act (1987), 77 Trademark Rep. 375, 398, *reprinted in* USTA, *The Trademark Law Revision Act of 1988*, at 15, 38 (1989).[2]

Empire argues that the policies behind the intent-to-use provisions will be undermined by this reading of § 7(c). Empire claims that the Lanham Act was amended to encourage applicants to file as early as possible and thereby disclose their marks publicly. In addition, the constructive use date provided by the application promotes certainty in the trademark system. To allow a subsequent user to obtain an injunction and prevent actual registration will subvert these policies and encourage pirates to make subsequent use of a proposed mark in order to extort licensing fees. The legislative history supports this view. As the Trademark Review Commission Report stated:

> Constructive use is essential for an intent-to-use application. Without it, the application would be an easy target for pirates, vulnerable also to priority claims of anyone else whose use began after an applicant's filing date but before applicant's use. This would strongly discourage filing intent-to-use applications and also defeat our objective of reducing uncertainty.

77 Trademark Rep. at 397, *reprinted in The Trademark Law Revision Act of 1988, supra,* at 37; *see also* S.Rep. No. 100–515, 100th Cong.2d Sess. 29–30 (1988), U.S.Code Cong. & Admin.News 5577, 5591–5593, *reprinted in The Trademark Law Revision Act of 1988, supra,* at 153, 181–82; USTA Testimony before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee (Sept. 8, 1988) (statement of Ronald S. Kareken), *reprinted in The Trademark Law Revision Act of 1988, supra,* at 227, 233.

Although my interpretation of § 7(c) may not advance fully all of these policies, Congress apparently adopted the constructive use system with full knowledge of its possible imperfections. Under the Senate bill, intent-to-use applicants were permitted to sue for an injunction, but federal courts were prohibited from entering a final judgment until the mark was registered. *See* S. 1883, 100th Cong., 2d Sess. § 31(1)(B) (1988) (amending § 34(a)) ("However, no final judgment shall be entered in favor of an applicant under section 1(b) prior to the mark being registered, if such applicant cannot prevail without establishing constructive use pursuant to section 7(c)."), *reprinted in The Trademark Law Revision Act of 1988, supra,* at 143, 148; *see also* S.Rep. No. 100–515, *supra,* at 30, U.S.Code Cong. & Admin.News 5577, 5592, *reprinted in The Trademark Law Revision Act of 1988, supra,* at 182. The House Subcommittee on Courts, Civil Liberties and the Administration of Justice of the House Committee on the Judiciary rejected this proposal based on two concerns. *See* H.R.Rep. No. 100–1028, 100th Cong., 2d Sess. 4 (1988), U.S.Code Cong. & Admin.News 5577, 5580, *reprinted in The Trademark Law Revision Act of 1988, supra,* at 280. First, as a practical matter, the Subcommittee did not want to force district courts to maintain unresolved cases in their files for up to four years pending the disposition of an application. *Id.* Second, the Subcommittee expressed constitutional reservations about the Senate bill. Since use in commerce is the constitutional basis for the Lanham Act, the Subcommittee was concerned that federal courts would not have jurisdiction over claims by intent-to-use applicants. In the absence of actual use, there may not be a case or controversy ripe for judicial resolution. *Id.*

The House Committee endorsed the Subcommittee's conclusions, noting "that if 'in-

---

**2.** Under the common law and the Lanham Act, ownership rights are obtained by adoption and use in commerce. *See, e.g., La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271 (2d Cir.1974); *Hydro–Dynamics,* *Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1472 (Fed.Cir.1987) (*citing New England Implicating Co. v. Mendes,* 190 F.2d 415, 417 (1st Cir.1951)).

tent to use' applicants cannot sue to enforce their rights, those rights may, at least in some situations, be rendered meaningless. On the other hand, [the Committee] is unwilling to endorse a system that raises the serious questions propounded by the experts on Federal court matters." *Id.* Although the Committee expressed its hope that it would find a resolution of this issue by the effective date of the statute, *see id.*, to date Congress has not passed any clarifying amendments. While this discussion relates primarily to offensive use of an application to enjoin use by a subsequent user, it applies to Empire's claims of a right to make defensive use of its pending application because it shows that Congress knew that constructive use rights could be irrelevant "in some situations." This is one of those situations.

At the oral argument, Empire sought to analogize its case to the practice of the Trademark Trial and Appeal Board that permits intent-to-use applicants to make defensive use of their applications in opposition proceedings. *See Larami Corp. v. Talk to Me Programs Inc.*, 36 U.S.P.Q.2d 1840 (T.T.A.B.1995); *Zirco Corp. v. American Telephone and Telegraph Co.*, 21 U.S.P.Q.2d 1542 (T.T.A.B.1992). Professor McCarthy endorses this analogy, encouraging federal courts to follow the TTAB practice and deny injunctions where the defendant has a pending intent-to-use application. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19.08[1][d] (3d ed. 1995).

I am not bound by these rulings and respectfully decline to follow them. As discussed above, this practice has no basis in the text or legislative history of § 7(c). *See Talk to Me Products, Inc. v. Larami Corp.*, 804 F.Supp. 555, 560 (S.D.N.Y.1992) (refusing to follow *Zirco* ), *aff'd*, 992 F.2d 469 (2d Cir.1993). In addition, the Board itself recognized that its rule should apply only to opposition proceedings and not infringement actions. As the Board held in *Larami:*

> In a proceeding before the Board, whose jurisdiction is limited solely to the registration of a party's mark, it would defeat the purpose of filing an intent-to-use application if an applicant were not able to rely

upon its constructive use date in defending its right to registration, as pointed out in the *Zirco* decision. On the other hand, in a civil action involving a party's right to use a mark ..., it would not be equitable for an intent-to-use applicant to be entitled to rely upon a constructive use date prior to registration of its mark, and thus potentially prior to any use whatsoever, to defeat the common law rights of a first actual user of its mark.

*Larami Corp.*, 36 U.S.P.Q.2d at 1845. Its review of the legislative history and statutory scheme of the 1988 Amendments led the Board to conclude that "Congress intended Section 7(c) to operate differently in the district courts than it does in proceedings before the Board." *Id.* at 1845 n. 7 (noting that amendments to §§ 18, 21 and 24, 15 U.S.C. §§ 1068, 1071, and 1092, require the Board to defer entry of a final judgment in favor of an intent-to-use applicant pending registration, while a similar amendment to § 34, 15 U.S.C. § 1116, governing infringement actions in the district courts was, as discussed above, deleted by the House Committee on the Judiciary).

In conclusion, Congress adopted § 7(c) to modify the traditional rules of priority, according intent-to-use applicants constructive use as of the date of filing once their applications mature into a registration. However, as discussed above, the Trademark Review Commission Report proposed that before a registration issues, the priority inquiry is to be governed by traditional rules. Although the constructive use provision is an important element of the intent-to-use application system, Congress made clear in the text of the statute that *all* rights deriving from an application, both offensive and defensive, are contingent on registration. *See* 15 U.S.C. 1057(c). An analysis of the legislative history and the underlying policies Congress sought to adopt does not evidence a contrary intent. Accordingly, I must enforce the statute as drafted. *See James,* 478 U.S. at 606, 106 S.Ct. at 3121–22; *Wetzler,* 38 F.3d at 73.

■ In *Talk to Me Products, Inc. v. Larami Corp.,* 804 F.Supp. 555 (S.D.N.Y.1992), *aff'd,* 992 F.2d 469 (2d Cir.1993), Judge Haight found that whether an intent-to-use

application was rejected by the PTO or still pending was "a distinction without a difference" in determining whether an applicant can make offensive use of its application before a registration issues. *Id.* at 560 (declining to distinguish *Windows User, Inc. v. Reed Bus. Pub. Ltd.*, 795 F.Supp. 103 (S.D.N.Y.1992)). Likewise, I conclude that whether an applicant seeks to make offensive or defensive use of a pending intent-to-use application is irrelevant. In both situations, the applicant simply has no enforceable trademark rights. Thus, Empire's motion for reconsideration is DENIED.

## II. Empire's Motion for a Stay Pending Appeal

In the alternative, Empire seeks a stay of the preliminary injunction pending an appeal to the Second Circuit. Fed.R.Civ.P. 62(c) grants district courts the discretion to "suspend, modify, restore or grant an injunction" pending an appeal. In exercising this discretion, courts consider:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Kurt S. Adler Inc. v. World Bazaars Inc.*, 36 U.S.P.Q.2d 1682, 1690, 897 F.Supp. 92 (S.D.N.Y.1995) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987)).

I have considered these factors and conclude that granting a stay in this case would be inappropriate. Accordingly, Empire's motion for a stay of the preliminary injunction is DENIED.

## III. WarnerVision's Motion to Modify the Injunction Order

WarnerVision seeks two modifications of the injunction Order dated February 16, 1996 as modified by Order dated February 22, 1996. First, it proposes to add language barring Empire from filling orders it took at the New York City Toy Fair during the period between February 12 when the initial Opinion and Order was signed and February 16 when the preliminary injunction order was issued. WarnerVision made this request earlier and I refused to grant it when I issued the Order dated February 22, modifying the February 16 Order. WarnerVision contends that I have the authority and discretion to enjoin Empire from filling these orders for its toys taken during this interim period when it was clear that an injunction would issue shortly. Assuming I do have this authority, I decline to exercise it. WarnerVision is amply protected by the deadline imposed on shipment of goods. This grace period is necessary to allow Empire to dispose of its inventory in a non-wasteful manner. If those orders are required to accomplish this task, I find the equities weigh in Empire's favor and conclude it should be allowed to fill those orders.

Next, WarnerVision seeks modification of the injunction order permitting Empire to ship goods to customers until April 15, 1996. WarnerVision argues that since the goods are shipped from the Orient, Empire can circumvent the injunction by placing the toys on a slow boat that will not arrive for many months. Plaintiff contends Empire could ship goods by April 15 to arrive on retail shelves in the fall of 1996—a very slow boat. Empire responds that it offers its customers a discount if they take title of the goods at the point of shipment and arrange for shipment on their own. Empire argues that it should be allowed to continue this practice. Finally, WarnerVision in its reply brief contends that the Court should enjoin all goods from entering the country after April 15 regardless of who holds title. I have considered WarnerVision's proposal, and decline to adopt it.

Therefore, the injunction Order dated February 16, 1996, as modified by Order dated February 22, 1996 remains in effect without further modification.

## IV. Conclusion

For the reasons discussed above, Empire's motion for reconsideration, or in the alternative for a stay pending appeal is DENIED.

WarnerVision's cross motion for modification of the injunction order is also DENIED.

SO ORDERED.