**WARNERVISION ENTERTAINMENT INC., Plaintiff–Counterdefendant–Appellee,**

v.

**EMPIRE OF CAROLINA, INC., Empire Industries, Inc., Empire Manufacturing, Inc. and Thomas Lowe Ventures, Inc. d/b/a Playing Mantis, Defendants–Counterclaimants–Appellants.**

No. 2003, Docket 96–7380.

United States Court of Appeals, Second Circuit.

Argued May 31, 1996.

Decided Nov. 27, 1996.

Charles A. Laff, Chicago, IL (Martin L. Stern, Louis Altman, Judith L. Grubner, Laff, Whitesel, Conte & Saret, Ltd., Chicago, IL, Paul Fields, Alexandra D. Malatestinic, Darby & Darby, New York City, of counsel), for Defendants–Counterclaimants–Appellants.

Charles P. Lapolla, New York City (Robert C. Faber, Ostrolenk, Faber, Gerb & Soffen, New York City, of counsel), for Plaintiff–Counterdefendant–Appellee.

Stephen R. Baird, John J. Cummins, Joseph R. Dreitler, Anne S. Jordan, William R. Golden, Jr., New York City, submitted a brief for International Trademark Ass'n, amicus curiae.

Before: VAN GRAAFEILAND and LEVAL, Circuit Judges, and SCHEINDLIN, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Empire of Carolina, Inc., Empire Industries, Inc. and Empire Manufacturing, Inc. (hereafter "Empire") and Thomas Lowe Ventures, Inc. d/b/a Playing Mantis (hereafter "TLV") appeal from orders of the United States District Court for the Southern District of New York (Baer, J.) preliminarily enjoining appellants from violating Warner-Vision Entertainment Inc.'s trademark "REAL WHEELS," and denying Empire's cross-motion for injunctive relief. See 915 F.Supp. 639 and 919 F.Supp. 717. The appeal was argued on an emergency basis on May 31, 1996, and on June 12, 1996, we issued an order vacating the preliminary injunction with an opinion to follow. This is the opinion.

Appellants contend that the grant of preliminary relief in WarnerVision's favor should be reversed on any of several grounds. We limit our holding to one—the district court's misapplication of 15 U.S.C. § 1057(c), part of the intent-to-use ("ITU") provisions of the Lanham Act, to the facts of the instant case. This error constitutes an abuse of discretion. See Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir.1990).

Prior to 1988, an applicant for trademark registration had to have used the mark in commerce before making the application. Following the enactment of the ITU provisions in that year, a person could seek registration of a mark not already in commercial

use by alleging a bona fide intent to use it. See 15 U.S.C. § 1051(b). Registration may be granted only if, absent a grant of extension, the applicant files a statement of commercial use within six months of the date on which the Commissioner's notice of allowance pursuant to 15 U.S.C. § 1063(b) is issued. See 15 U.S.C. § 1051(d); see also Eastman Kodak Co. v. Bell & Howell Document Management Prods. Co., 994 F.2d 1569, 1570 (Fed.Cir.1993). The ITU applicant is entitled to an extension of another six months, and may receive further extensions from the Commissioner for an additional twenty four months. 15 U.S.C. § 1051(d)(2). If, but only if, the mark completes the registration process and is registered, the ITU applicant is granted a constructive use date retroactive to the ITU filing date. 15 U.S.C. § 1057(c). This retroactive dating of constructive use permits a more orderly development of the mark without the risk that priority will be lost. The issue we now address is whether the creator of a mark who files an ITU application pursuant to 15 U.S.C. § 1051(b) can be preliminarily enjoined from engaging in the commercial use required for full registration by 15 U.S.C. § 1051(d) on motion of the holder of a similar mark who commenced commercial use of its mark subsequent to the creator's ITU application but prior to the ITU applicant's commercial use. A brief statement of the pertinent facts follows.

On September 9, 1994, TLV sent the Patent and Trademark Office ("PTO") an ITU application for the mark "REAL WHEELS," stating an intent-to-use the mark in commerce on or in connection with "the following goods/services: wheels affiliated with $\frac{1}{64}$th and $\frac{1}{43}$rd scale toy vehicles." The application was filed on September 23, 1994. Around the same time, two other companies, apparently acting in innocence and good faith, decided that the "REAL WHEELS" mark would fit the products they were preparing to market. One of them, Buddy L, a North Carolina manufacturer that had been marketing toy replicas of vehicles for many years, selected the name for its 1995 line of

---

* Honorable Shira A. Scheindlin, U.S. District Judge for the Southern District of New York, sitting by designation.

vehicle replicas. The other, WarnerVision Entertainment Inc., found the name suitable for certain of its home videos which featured motorized vehicles. The videos and vehicles were shrink-wrapped together in a single package. Both companies ordered trademark searches for conflicts in the name, but, because TLV's application had not yet reached the PTO database, no conflict was found.

Both companies then filed for registration of their mark. However, because WarnerVision's application was filed on January 3, 1995, three days before Buddy L's, it was approved, and Buddy L's was rejected. Buddy L nonetheless continued with its marketing efforts and entered into negotiations with TLV for a possible license based on TLV's ITU application.

Unfortunately, Buddy L encountered financial problems, and on March 3, 1995, it filed for relief under Chapter 11 of the Bankruptcy Law as a debtor in possession. Thereafter, in an auction sale approved by the Bankruptcy Court, Buddy L sold substantially all of its assets to Empire. On October 20, 1995, Empire purchased from TLV all of TLV's title and interest in and to the REAL WHEELS product line, trademarks and good will associated therewith, including the September 23, 1994 ITU application. At the same time, Empire licensed TLV to use the REAL WHEELS mark for toy automobiles. On November 13, 1995, WarnerVision brought the instant action.

■ In granting the preliminary injunction at issue, the district court quoted the Supreme Court's admonition in *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992), to the effect that when the words of a statute are unambiguous, judicial inquiry as to its meaning is complete. 919 F.Supp. at 719. We do not quarrel with this statement as a general proposition; however, we question its application in the instant case. Section 1057(c) of Title 15, the statute at issue, provides that, "[c]ontingent on the registration of a mark ... the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect...."

Empire is not claiming constructive use based on registration. Registration will not take place until after the section 1051(d) statement of use is filed and further examination is had of the application for registration. *See Eastman Kodak, supra*, 994 F.2d at 1570. Empire contends that the district court erred in granting the preliminary injunction which bars it from completing the ITU process by filing a factually supported statement of use.

We agree. Empire does not contend that the filing of its ITU application empowered it to seek affirmative or offensive relief precluding WarnerVision's use of the REAL WHEELS mark. It seeks instead to assert the ITU filing as a defense to WarnerVision's efforts to prevent it from completing the ITU registration process. In substance, Empire requests that the normal principles of preliminary injunction law be applied in the instant case. This accords with the stated intent of Congress that the Lanham Act would be governed by equitable principles, which Congress described as "the core of U.S. trademark jurisprudence." *See* S.Rep. No. 515, 100th Cong., 2d Sess. 30 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5592.

Thirty years ago, the author of a note in 78 Harv.L.Rev. 994 (1965) made the following cogent observation concerning preliminary injunctions:

> A court hearing a request for a preliminary order must determine how best to create or preserve a state of affairs such that it will be able upon conclusion of the full trial to render a meaningful decision for either party.

■ This concept—the preservation of the court's power to render a meaningful decision after trial on the merits—has been, and continues to be, a basic principle of preliminary injunction law. The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks. It is "to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits," *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir.1975); "to keep the parties, while the suit goes on, as far as possible in the respective positions

they occupied when the suit began," *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir.1953). *See* 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2947 at 121. As a general rule, therefore, a temporary injunction "ought not to be used to give final relief before trial," *United States v. Adler's Creamery, Inc.*, 107 F.2d 987, 990 (2d Cir.1939). Neither should it "permit[ ] one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ." *Corica v. Ragen*, 140 F.2d 496, 499 (7th Cir.1944).

As the International Trademark Association ("ITA") correctly notes at page 9 of its amicus brief, if Empire's ITU application cannot be used to defend against WarnerVision's application for a preliminary injunction, Empire will effectively be prevented from undertaking the use required to obtain registration. In short, granting a preliminary injunction to WarnerVision would prevent Empire from ever achieving use, registration and priority and would thus effectively and permanently terminate its rights as the holder of the ITU application. Quoting 2 *McCarthy on Trademarks and Unfair Competition* § 19.08[1][d] at 19–59 (3d ed. 1992), the ITA said "this result 'would encourage unscrupulous entrepreneurs to look in the record for new [intent-to-use] applications by large companies, rush in to make a few sales under the same mark and sue the large company, asking for a large settlement to permit the [intent-to-use] applicant to proceed on its plans for use of the mark.' " This vulnerability to pirates is precisely what the ITU enactments were designed to eliminate. *See* S.Rep. No. 515, *supra*, at 5592.

The Trademark Trial and Appeal Board believes that an ITU applicant should be able to defend against such piratical acts despite the fact that full registration has not yet been given. *See Larami Corp. v. Talk to Me Programs Inc.*, 36 U.S.P.Q.2d 1840 (T.T.A.B. 1995); *Zirco Corp. v. American Tel. & Tel. Co.*, 21 U.S.P.Q.2d 1542 (T.T.A.B.1992). When the foregoing authorities were cited to the district court, the court correctly stated that it was not bound by them. 919 F.Supp.

at 721. However, the district court was bound not to construe and apply the ITU provisions in such a manner as to effectively convert a preliminary injunction based largely on disputed affidavits into a final adjudication on the merits.

The ITU provisions permit the holder of an ITU application to use the mark in commerce, obtain registration, and thereby secure priority retroactive to the date of filing of the ITU application. Of course, this right or privilege is not indefinite; it endures only for the time allotted by the statute. But as long as an ITU applicant's privilege has not expired, a court may not enjoin it from making the use necessary for registration on the grounds that another party has used the mark subsequent to the filing of the ITU application. To permit such an injunction would eviscerate the ITU provisions and defeat their very purpose.

■ This is not to say that a holder of a "live" ITU application may never be enjoined from using its mark. If another party can demonstrate that it used the mark before the holder filed its ITU application or that the filing was for some reason invalid, then it may be entitled to an injunction. WarnerVision says that it made analogous use of the REAL WHEELS mark before TLV filed its ITU application and also that the assignment to Empire of TLV's ITU application was invalid. But the district court did not pass on these contentions, and we will not consider them in the first instance.

The district court based its grant of preliminary relief on the proposition that "[t]he first party to adopt and use a mark in commerce obtains ownership rights," and held that "WarnerVision made prior use of the mark in commerce and is the senior user." 915 F.Supp. at 645. On the basis of the present record, that decision cannot stand. WarnerVision also contends that TLV's ITU application was not properly assigned to Empire because Empire did not succeed to a portion of TLV's business. *See* 15 U.S.C. § 1060. Like the claims of analogous use, this contention raises fact issues which should not be addressed in the first instance by this Court. We vacate that portion of the district court's orders that grants WarnerVi-

sion preliminary injunctive relief and remand to the district court for further proceedings not inconsistent with this opinion.

We affirm the district court's denial of Empire's application for a preliminary injunction enjoining WarnerVision from using the REAL WHEELS mark for toys outside the video cassette market. Empire does not claim that it may use TLV's ITU application offensively to obtain this injunction, and we express no opinion on this subject. Empire says only that Buddy L, a company it acquired in a bankruptcy sale, made analogous use of the mark prior to WarnerVision's first use of the mark. On the record before us, we cannot say that the district court abused its discretion in denying a preliminary injunction on this ground.